# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs December 14, 2004

## STATE OF TENNESSEE v. ANTHONY DAVIDSON[1]

### Appeal from the Criminal Court for Sullivan County
### Nos. S45,320-321     Phyllis Miller, Judge

---

### No. E2004-00921-CCA-R3-CD - Filed December 30, 2004

---

The defendant, Anthony Davidson, appeals the trial court's order revoking his probation. The single issue presented for review is whether the trial court abused its discretion by ordering the remainder of the sentence to be served. The judgment is affirmed.

### Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed

GARY R. WADE, P.J., delivered the opinion of the court, in which J. CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Steve McEwen, Mountain City, Tennessee (on appeal), and Leslie Hale, Assistant Public Defender (at trial), for the appellant, Anthony Davidson.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; and J. Lewis Combs, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On November 30, 2001, the defendant entered pleas of guilt to burglary, theft over $1,000.00, burglary of an automobile, two counts of uttering a forged instrument, and theft under $500.00. Concurrent, Range I sentences were imposed for the offenses as follows:

| Offense | Sentence |
|---|---|
| Burglary | Four Years |
| Theft over $1,000.00 | Four Years |
| Burglary of an automobile | Two Years |
| Uttering a forgery | Two Years for Each |
| Theft under $500.00 | Eleven Months, Twenty-nine Days |

---

[1]In indictment number S45,321, the defendant is identified as "Anthony G. Davidson."

The defendant was initially placed in a community corrections program at Hay House. Two failed drug screens resulted in the filing of violation warrants on April 26 and December 6, 2002. The defendant pled guilty to each charge and did not have any additional positive drug screens. The defendant completed his term at Hay House and graduated before being transferred to probation on July 18, 2003. Included among the several conditions of supervision were the following:

> (4)     I will work at a lawful occupation and support my dependents, if any, to the best of my ability.
> (8)     I will agree to pay all required fees to the Supervision and Criminal Injuries fund unless waived by appropriate authorities. I will pay all court costs, fines and restitution as set by the Court.

Under "special conditions," the defendant was required to refrain from contact with Amanda Harris, his charge partner in the burglary and theft over $1,000 offenses.

On February 24, 2004, a violation of probation warrant was issued alleging that the defendant had violated rules 4 and 8. The warrant also included the allegations that the defendant was the father of a child born to Amanda Harris on January 15, 2004, and that Ms. Harris was at his residence on January 28 of the same year, thereby violating the "no contact" condition.

At the hearing on the warrant, the defendant pled guilty to violating the probation. As to the charge that he had failed to maintain gainful employment, the defendant explained that he was collecting unemployment insurance from October 16, 2003, until January 4, 2004, a fact that he had made known to his probation officer. He conceded, however, that he had failed to present written proof of his status to the officer. The defendant testified that just prior to his arrest on the warrant, he had found a job in deliveries with Craftmatic America, a company which sold adjustable beds. He stated that with the help of his brother, who worked for the company, he had arranged to make deliveries only within the State of Tennessee in order to meet the terms of his probation. The defendant estimated that his salary would be between $30,000.00 and $40,000.00 annually plus benefits. He explained that he had found it difficult to get employment with his felony record, but because his brother had worked with Craftmatic for nine years, they were willing to give him an opportunity. He identified the owner of the local Craftmatic division as Randy Broyles.

The defendant acknowledged that he had experienced some "trouble reporting" to his officer because of the deaths of his father and his uncle and the serious illness of his mother. While stating that he had paid a $50.00 administrative fee, the defendant admitted that he had failed to make payment of other court costs. He maintained that when he was transferred from community corrections to probation he believed that the "no contact" condition with Amanda Harris had been "lifted" and that by the time he learned otherwise, some three or four months later, he had impregnated Ms. Harris. The defendant pointed out that there were no special conditions regarding Ms. Harris on the probation card he had received after being released from community corrections. He stated that Ms. Harris, who was married but separated, had filed for a divorce, served process by publication, and was granted a judgment on February 23, 2004. The divorce complaint was filed one

day before the issuance of the probation violation warrant. The record suggests that Ms. Harris entered into a relationship with the defendant after her separation from her husband.

During his testimony, the defendant asked the trial court to relieve him of the "no contact" condition with Ms. Harris so they could marry. Ms. Harris had by that time served her jail term and satisfied her probation requirements. At the time of the hearing, Ms. Harris had two children by the defendant, the younger of whom was the result of contact after his release from community corrections. The baby was two months old at the time of the revocation hearing. According to the defendant, he and Ms. Harris lived together in an apartment until the "no contact" order. He acknowledged that he was present when Ms. Harris delivered his second child, again in violation of the technical terms of the probation. The defendant maintained that he had worked for the City of Kingsport until the death of his father, thereby qualifying for the unemployment payments, and was current in his court payments until his period of unemployment. In response to a question by the court, the defendant asserted that he had applied for a waiver of his probation fees during his term of unemployment when his received $135.00 per week in benefits. He claimed that he paid Ms. Harris's rent during this time even before her divorce from her estranged husband. He explained that he felt like he had an obligation to support the children he had fathered. The defendant reported that he had commenced legal proceedings to legitimate his older child but had not had the opportunity to do so on his younger child.

Jason Hagood, the probation officer, testified that he had not received any probation fees since August 19, 2003. While Hagood acknowledged that the defendant had offered to make a partial payment after being served with the violation warrant, he advised the defendant to wait until his hearing date on March 15, 2004. He stated that the defendant had failed to return his unemployment verification from the unemployment office which would have caused a reduction in his fees to only $15.00 per month. The officer acknowledged that the defendant had notified him once when he missed an appointment due to his work at Craftmatic but expressed concern that the defendant had driven to Middle Tennessee absent his permission. It was his belief that the defendant was aware of a "no contact" rule regarding Ms. Harris, who was married to another man at the time of the crimes.

After determining that the defendant had, in fact, violated the "no contact" rule with Ms. Harris, the trial court revoked probation and ordered the defendant to serve a Range I, four-year sentence. The court allowed credits for all of the time he had served in community corrections and any pre-trial jail term. In its written order, the trial court also found a violation of rule 4, where the defendant had either failed to maintain employment or failed to provide proof of employment, and rule 8, for his failure to pay fees.

In this appeal, the defendant contends that the order of revocation and the sentence to the Department of Correction were unduly harsh, especially because of the death of his father on October 3, 2003, the death of his uncle on February 1, 2004, and the chronic diabetic illness of his mother. While admitting that he had engaged in an extramarital relationship with Amanda Harris despite understanding the "no contact" order, the defendant argues that he should have been granted some

leniency because he had gained a promise of full-time employment conditioned only upon a proper endorsement on his driver's license. He asserts that the officer supervising the conditions of release had informed him that the condition was to be removed during his probation. The defendant also insists that because Ms. Harris had ultimately been granted a divorce and because the probation card did not list the no-contact rule until well after his transfer to probation, the trial court abused its discretionary authority. The defendant further maintains that because he and Ms. Harris had a second child two months prior to the hearing and he intended to marry her, some leniency was warranted. It is his argument that the trial court should have ordered an additional jail term followed by another probationary term instead of the sentence to the Department of Correction.

Our general law provides that a trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e); Stamps v. State, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). On appeal, a revocation will be upheld absent an abuse of discretion. In order to establish that the trial court has abused its discretion, the defendant must show that there is no substantial evidence to support the determination that he violated his probation. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). Relief can be granted only when the logic and reasoning of the trial court were improper viewed in light of the factual circumstances and legal principles involved. State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001).

In this instance, the defendant has been unable to establish that the trial judge did not exercise a conscientious and intelligent judgment. See State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). The defendant acknowledged that he had violated at least two conditions of his probation, one of which required him to provide proof of his employment status to his probation officer and the other of which required him to make payment of his probation fees. The record establishes that the defendant had failed, since being placed on probation, to adequately communicate his employment status to the officer and had failed, despite receiving unemployment benefits, to either pay his supervision fees or apply for a reduced fee based upon his unemployment status. When a defendant has violated the terms of probation, a trial court may order incarceration for the entire balance of the sentence. Tenn. Code Ann. §§ 40-35-310, - 311(e). The trial court's determination that the defendant serve a sentence of incarceration will not be overturned absent an abuse of discretion. See Harkins, 811 S.W.2d at 82. In our view, the violation of those terms are enough to have warranted revocation, even if, by usual standards, the violations are minor.

Application of the special "no contact" condition as a basis for the probation violation is less certain. Our supreme court has ruled that the terms of the probation must reasonably relate to the offense or offenses at issue. State v. Mathes, 114 S.W.3d 915 (Tenn. 2003); Harkins, 811 S.W.2d at 82. In State v. Mathes, our high court addressed the propriety of special conditions of probation. The trial court, as a condition of the defendant's probation, had ordered the defendant to initiate legitimation proceedings of her child. Our supreme court held that the legitimation requirement was not an appropriate condition of probation because it was not reasonably related to the sentence for reckless aggravated assault. 114 S.W.3d at 918. Here, however, the record demonstrates that Ms.

Harris had been a co-defendant in the crimes at issue. If she had not been involved in those crimes, a "no contact" provision merely because the defendant had failed to marry her, or because she had failed to gain a divorce, or because neither had initiated legitimation proceedings relative to the children would not have been valid. Conditions of release, as pointed out in the Mathes case, must not be "unduly restrictive of the offender's liberty, or incompatible with the offender's freedom of conscience, or otherwise prohibited by this chapter." Tenn. Code Ann. § 40-35-303(d)(9).

Because other appropriate grounds do exist, however, the judgment of revocation is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE